THOMAS L. MAHLEN, JR,
JOHN L. WRIGHT
HALVERSON, MAHLEN & WRIGHT, P.C.
P.O. Box 80470
Billings, MT 59108-0470
Phone 406-652-1011 | Fax 406-652-8102
tmahlen@hglaw.net
jwright@hglaw.net
Attorneys for Plaintiff Nautilus Insurance Company

## UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY | Cause No.: 2:19-CV-00024-SEH |
| Plaintiff, | Hon. Sam E. Haddon |
| v. | **SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |
| VOYAGER CONSTRUCTION, LLC, VOYAGER PROPERTIES, LLC, EMPLOYERS MUTUAL CASUALTY COMPANY; SENTINEL INSURANCE COMPANY; AND, THOSE CERTAIN UNDERWRITERS OF LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. N04NZ00790 | |
| Defendants. | |

COMES NOW, Nautilus Insurance Company, for its Complaint for Declaratory Judgment against Voyager Construction, LLC ("VCL"), Voyager Properties, LLC ("VPL"), Employer Mutual Casualty Company ("EMC"), Sentinel Insurance Company ("Sentinel"), and Those Certain Underwriters of Lloyd's of London Subscribing to Policy No. N04NZ00790 ("Underwriters"), states and alleges as follows:

1

**NATURE OF ACTION**

1.      This is a claim for declaratory judgment pursuant to Rule 57, F.R.Civ.P., and 28 U.S.C. § 2201.

**PARTIES**

2.      Nautilus Insurance Company ("Nautilus") is and was at all relevant times an eligible surplus lines insurer whose policies are sold and delivered in Montana.  Nautilus is a corporation incorporated under the laws of Arizona and has its principal place of business in Scottsdale, Arizona.  It is and is therefore a citizen of Arizona.

3.      Defendant VCL was at all times relevant a limited liability company organized under the laws of Montana.

4.      Annual Reports filed with the Montana Secretary of State for the years 2001-2010 identify the following members of VCL and their addresses:

   a.      For the years 2001 through 2004:  James Dolan, 11th Floor, Pittsburgh, PA 15219; and Timothy Blixseth, 71-534 Sahara Rd., Rancho Mirage, CA 92270.

   b.      For the years 2005 through 2010: James Dolan, 90 Beta Dr., Pittsburgh, PA, 15238.

5.     Based upon information contained in the last Annual Report filed with the Montana Secretary of State in 2010, James Dolan was the sole member of VCL and a citizen of the Commonwealth of Pennsylvania, and thus VCL is a citizen of the Commonwealth of Pennsylvania.

6.     Defendant VPL was at all times relevant a limited liability company organized under the laws of Montana.

7.     Upon information and belief, VPL merged with and became the successor to VCL.

8.     Annual Reports filed with the Montana Secretary of State in the years 2003 through 2015 identify one member of VPL and two Pennsylvania addresses for that member:

> a.     For years 2003 and 2004: James Dolan, Two Chatham Center, 11th Floor, Pittsburgh, PA 15219.
>
> b.     For years 2005 through 2015: James Dolan, 90 Beta Drive, Pittsburgh, PA 15238.

9.     Upon information and belief, and based upon the last Annual Report filed with the Montana Secretary of State, James Dolan was the sole member of VPL and a citizen of the Commonwealth of Pennsylvania, and thus VPL is a citizen of the Commonwealth of Pennsylvania.

10.    Defendant EMC is an insurer licensed to do business in Montana. Upon information and belief, EMC insured VCL from 9/1/2005 to 9/1/2006 and from 9/01/2006 to 9/01/2007. EMC is corporation incorporated under the laws of Iowa, has its principal place of business in Iowa, and is therefore a citizen of Iowa. As a fellow insurer of VCL, with coverage before the inception of Nautilus' policy periods, EMC may have an interest in the rights determined by this action.

11.    Upon information and belief Sentinel is a corporation incorporated under the laws of Connecticut and has its principal place of business in Connecticut and, is therefore a citizen of Connecticut.  Defendant Sentinel insured Voyager Group, a party to the Underlying Action, and upon information and belief, provided a defense to Voyager Group.  Upon information and belief, Voyager Group and Sentinel were aware that VPL and VCL were parties to the Underlying Action.  Upon information and belief, VPL andVCL were insured pursuant to policy No. 40SBAIS3125 from 07/01/2011 to 07/01/2012 and possibly other insurance policies issued by Sentinel.

12.    Defendant Underwriters is a syndicate of insurers operating in the London market and providing builders' risk insurance to either one or both VCL or VPL. Upon information and belief, Underwriters is a citizen of the United Kingdom.

13.    Collectively, EMC, Sentinel, and Underwriters, are referred to as "Insurance Defendants" throughout.

4

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

15.     Upon information and belief, Defendants VCL and VPL, and Insurance Defendants, transact or transacted business in Montana and in this district out of which the causes of action in this case arise. Therefore, the VCL, VPL and Insurance Defendants are subject to personal jurisdiction in this district, and venue is proper in this district under 28 U.S.C. § 1391 and Montana Code Annotated § 25-2-121.

16.     This action seeks a declaration as to Nautilus' obligations pursuant to the policies referenced herein to indemnify VCL and VPL in the Underlying Suit. *Infra*.

17.     Venue is proper pursuant to 28 U.S.C. Section 1391 because the Underlying Suit is venued in the State of Montana and the contracts and obligations at issue in this case must be interpreted under Montana law.

18.     Pursuant to Local Rule 3.2(b), "venue is proper in any division of the court containing a county of proper venue under the laws of the State of Montana." Pursuant to Mont. Code Ann. 25-2-121(1)(b), a proper county for actions based on contract is, *inter alia*, "the county where the contract was to be performed." Here, the Underlying Action seeks damages arising out of construction conducted in

5

Madison County, Montana. Therefore, pursuant to Local Rules 1.2(c)(2) and 3.2(b), venue is proper in the United States District Court for the District of Montana, Butte Division.

## UNDERLYING ACTION

19.     On October 5, 2015, Enclave Condominium Owners Association, Inc. and its members ("Underlying Plaintiffs") filed an Amended Complaint in the Montana Fifth Judicial District against Underlying Defendants VCL and VPL, DV-29-2015-48 (attached as **Exhibit A**)("Underlying Action"). The Amended Complaint asserted claims against VCL and VPL arising out of the construction of condominiums in the Yellowstone Club in Madison County, Montana. The condominiums consisted of six buildings, each consisting of two units.

20.     The underlying Amended Complaint alleged, *inter alia*, that construction of the condominiums was completed on the following dates:

a.     Enclave Building 1 was completed in October 2006 and its two units were sold in 2007 (*Amended Complaint*, ¶ 38);

b.     Enclave Building 2 was completed in November 2006 and its two units were sold in December 2007 (*Amended Complaint*, ¶ 39);

c.     Enclave Building 3 was completed in June 2007 and its two were sold prior to completion (*Amended Complaint*, ¶ 40);

       d.     Enclave Building 4 was completed in July 2007 and its two units were sold in August and September 2007 (*Amended Complaint*, ¶ 41);

       e.     Enclave Building 6 was completed in February 2008 and its units were sold and occupied thereafter (*Amended Complaint*, ¶ 42); and,

       f.     Enclave Building 5 was completed in October 2013 and its units were sold and occupied thereafter (*Amended Complaint*, ¶ 43).

21.    Nautilus provided, and continues to provide, a defense to VCL and VPL in the underlying action pursuant to a reservation of rights as amended.

22.    In filing *Defendants [Voyager Construction and Voyager Properties] Amended Answer, Third Party Complaint and Jury Demand* on May 14, 2018 (Attached as **Exhibit B**) in the Underlying Action, Defendants Voyager Construction admitted to each completion date as alleged by underlying Plaintiffs and as set forth above.

23.    Underlying Plaintiffs asserted various claims against VCL, alleging that, *inter alia*, VCL and VPL failed to perform construction work in a reasonably skillful and workmanlike manner and that such failures damaged Underlying Plaintiffs.

24.    Underlying Plaintiffs alleged damages due to VCL's and VPL's alleged breaches, which included the replacement of the roofs on all six buildings.

25.     By letter of 05/24/19, Nautilus, through counsel, tendered defense and indemnity of the Underlying Action to Sentinel and invited Sentinel to participate in mediation of the Underlying Action scheduled for 06/04/19.

26.     On 06/04/19, mediation took place.   Upon information and belief, Sentinel was aware of the mediation by virtue of insurance issued to its insured Voyager Group.   Upon information and belief, Sentinel made offers on behalf of Voyager Group.   Sentinel did not make settlement offers on behalf of VCL or VPL. The Underlying Action did not settle at mediation, but a mediator's recommendation was issued with a deadline of 06/14/19 to accept or reject the mediator's recommendation.

27.     By email of 06/06/19, a representative of EMC advised Sentinel that the Underlying Action did not settle at mediation, but that a mediator's proposal was forthcoming.

28.     By email of 06/07/19, Defense Counsel representing VCL and VPL tendered defense and indemnity of the Underlying Action to Sentinel on behalf of VCL and VPL.   Defense Counsel also informed Sentinel of the mediator's proposal, the expiration deadline for the proposal, and defense counsel's recommendation that the proposal be accepted.   The email concluded that Sentinel should acknowledge receipt of the email and advise if it required any additional information.

29.     By letter of 06/13/19 from Counsel for Nautilus to Sentinel and EMC, Nautilus offered to fund 50% of the mediator's recommendation on behalf of VCL and VPL, and requested that EMC and Sentinel also contribute toward a settlement of the claims against VCL and VPL by the deadline of the close of business on 06/14/19.

30.     On 06/14/19 at 10:57 a.m., a representative of EMC sent an email to a representative of Sentinel as follows:

> I am reviewing the coverage issues presented by Enclave Condo Owners Assoc., et al. v. Voyager Construction, LLC, et al. I have reviewed the Liability Coverage extended to Voyager Group, LLP by the Hartford, the Mediator's Proposal and the request for funding issued by Nautilus.
>
> Can you please call me asap to discuss whether The Hartford will participate in funding the settlement as proposed by the mediator and Nautilus?

(Email from Cheri Trites, Esq., to Toralf Lovlien and Sonia Kieffer, 06/14/19).

31.     On 06/14/19, the deadline to accept or reject the mediator's proposal, a representative of Sentinel responded to EMC's email stating, in part, that "[t]here are separate policies for Voyager Construction, and Voyager Properties . . ." but that "[a]t this time, The Hartford cannot agree to fund any portion of the settlement related to the mediator's proposal for Voyager Construction, or Voyager Properties." (Email from Toralf Lovlien to Cheri Trites, Esq., 06/14/19).

32.     Sentinel did not affirm or deny coverage or provide copies of its policies to Nautilus as requested.

33.     Prior to expiration of the mediator's proposal, EMC agreed to contribute the remaining 50% necessary to fund the mediator's recommended settlement on behalf of VCL and VPL in exchange for an assignment of VPL and VCL's bad faith claims against Sentinel, and the other non-defending Insurance Defendants, to EMC and to Nautilus.

34.     Without waiver of any rights of contribution or indemnity as against each other or other insurers of VCL or VPL except those insurers for third-party defendant subcontractors named in the Underlying Action, Nautilus and EMC agreed to contribute equally to the mediator's recommendation to achieve settlement on behalf of VCL and VPL.

## POLICIES OF INSURANCE

35.     Plaintiff reincorporates the foregoing paragraphs by reference.

### EMC Policies

36.     Upon information and belief, EMC insured VCL from September 1, 2005 to September 1, 2007 pursuant to commercial general liability (3D3-16-08) and commercial umbrella (3J3-16-08) policies. EMC has acknowledged its duty to defend Voyager Construction in the Underlying Action.

## Nautilus "Properties" Policies

37.     Nautilus issued Policy No. NC683684 to Voyager Properties II, LLC, with a policy period of 06/01/07-06/01/08.   Voyager Properties II, LLC, is not a party to the Underlying Action.   Neither VPL nor VCL are Insureds under Policy No. NC683684, which included Endorsement S012(03/06) which provided in part:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payment arising out of work performed by contractors or subcontractors hired by or on behalf of any insured, or any insured's acts or omissions in connection with the general supervision of such work.  This exclusion applies whether such liability is alleged to be direct or vicarious.
> * * *
> This insurance does not apply to:
> * * *
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
> * * *

38.     Nautilus    issued    Policy    Nos.    NC808287    (06/01/08-06/01/09), NC910672 (06/01/09-06/01/10), and NN022068 (06/01/10-06/01/11) to Voyager Properties II, LLC, and VPL.    These policies included Endorsement Nos. L240(06/07) and L282(06/07), which, respectively, provided in part:

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, or in any way related to, operations performed by any insured or any person or organization for whom any insured may be legally or contractually responsible, unless such operations are "designated operations".
> * * *

"Designated operations" means only those operations performed by any insured that are described on the General Liability Coverage Part Declarations, the endorsements, or supplements of this insurance. (L240(06/07))

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with he general supervision of such work.
* * *
This insurance does not apply to:
* * *
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
(L282(06/07))

39.     Additionally, effective 02/01/2011, Nautilus Policy No. NN022068 included Endorsement L293(06/07) which provided in part that "[t]his insurance does not apply to . . . "property damage" . . . arising out of any "construction operations" performed by you or on your behalf."

40.     Nautilus issued Policy Nos. NN252583 (07/01/12-07/01/13), NN367372 (07/01/13-07/01/14), NN455858 (07/01/14-07/01/15), and NN577933 (07/01/15-07/01/16) to Voyager Properties II, LLC.  These policies also included as Insureds VPL and VCL.  In addition to other terms, provisions, and exclusions, each of these policies included Endorsement No. L293(07/10) which provided in part that "[t]his insurance does not apply to . . . "property damage" . . . arising out of any "construction operations" performed by you or on your behalf."

41.   These policies also included Endorsement No. CL938(07/98), "Limitation of Coverage to Designated Premises and Projects" which provided in part:

> This insurance applies only to "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
> 2. The project shown in the Schedule.

42.   The 2012-2013, 2013-2014, and 2014-2015 polices list the following premises in their respective declaration sheets, with no designated projects or job sites:

a.   47280 Gallatin Rd
Big Sky      MT 59716-

b.   53 Trotwood Circle
Big Sky      MT 59716-

c.   Phase 5, Lot 123
Big Sky      MT 59716-

d.   3155 Spruce Cone Drive
Big Sky      MT 59716-

43.   The 2015-2016 policy lists only 47280 Gallatin Rd as a designated premise with no designated projects or jobsites.

44.   For the purposes of this Action, each of the above-referenced policies issued by Nautilus shall be referred to as "Nautilus Properties Policies."

## Nautilus "Construction" Policies

45.    Nautilus issued the following polices to VCL:

    a.    NC710476 (09/01/07-09/01/08) ("2007-2008 Policy");

    b.    NC839487 (09/01/08-09/01/09) ("2008-2009 Policy");

    c.    NC949265 (09/01/09-09/01/10) ("2009-2010 Policy"); and,

    d.    NN050971 (09/01/10-09/01/11) ("2010-2011 Policy").

46.    VPL was listed as an additional insured on the 2008-2009 Policy and a named insured on the 2010-2011 Policy.

47.    For the purposes of this Action, each of the above-referenced policies issued by Nautilus to VCL shall be referred to as "Nautilus Construction Policies."

48.    The Nautilus Construction Polices and Nautilus Properties Polices include, in relevant part, the following insuring language:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
> ***

14

b. This insurance applies to "bodily injury" and
"property damage" only if:
(1) The "bodily injury" or "property damage" is
caused by an "occurrence" that takes place
in the "coverage territory";
(2) The "bodily injury" or "property damage"
occurs during the policy period . . . .

49.    The Nautilus Construction Policies and Nautilus Properties Policies,

include, in material part, the following exclusions:

2. Exclusions
This insurance does not apply to:
a. Expected Or Intended Injury
"Bodily injury" or "property damage" expected
or intended from the standpoint of the insured.
This exclusion does not apply to "bodily injury"
resulting from the use of reasonable force to
protect persons or property.
b. Contractual Liability
"Bodily injury" or "property damage" for which
the insured is obligated to pay damages by
reason of the assumption of liability in a contract
or agreement. This exclusion does not
apply to liability for damages:
(1) That the insured would have in the absence
of the contract or agreement; or
(2) Assumed in a contract or agreement that is
an "insured contract", provided the "bodily
injury" or "property damage" occurs subsequent
to the execution of the contract or
agreement. Solely for the purposes of liability
assumed in an "insured contract", reasonable
attorney fees and necessary litigation
expenses incurred by or for a party
other than an insured are deemed to be
damages because of "bodily injury" or
"property damage", provided:
(a) Liability to such party for, or for the cost
of, that party's defense has also been
assumed in the same "insured contract";

15

and
(b) Such attorney fees and litigation expenses
are for defense of that party
against a civil or alternative dispute resolution
proceeding in which damages to
which this insurance applies are alleged.
\***
j. Damage To Property
"Property damage" to:
\***
(5) That particular part of real property on which
you or any contractors or subcontractors
working directly or indirectly on your behalf
are performing operations, if the "property
damage" arises out of those operations; or
(6) That particular part of any property that
must be restored, repaired or replaced because
"your work" was incorrectly performed
on it.
\***
l. Damage To Your Work
"Property damage" to "your work" arising out of
it or any part of it and included in the "products completed
operations hazard".
This exclusion does not apply if the damaged
work or the work out of which the damage arises
was performed on your behalf by a subcontractor.
m. Damage To Impaired Property Or Property
Not Physically Injured
"Property damage" to "impaired property" or
property that has not been physically injured,
arising out of:
(1) A defect, deficiency, inadequacy or dangerous
condition in "your product" or "your
work"; or
(2) A delay or failure by you or anyone acting
on your behalf to perform a contract or
agreement in accordance with its terms.
This exclusion does not apply to the loss of use
of other property arising out of sudden and accidental

16

physical injury to "your product" or
"your work" after it has been put to its intended
use.

50.    By endorsement, Exclusion "l" identified above was modified to provide as follows with regard to Nautilus Policies other than Policy No. NN252583, NN367372, NN455858, and NN577933:

This insurance does not apply to:
* * *
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
* * *

51.    By endorsement, the Nautilus Policies excluded punitive and exemplary damages.

52.    The Nautilus Construction Polices and Nautilus Properties Polices include, in relevant part, the following definitions:

**SECTION V – DEFINITIONS**
**\*\*\***
9. "Insured contract" means:
a. A contract for a lease of premises. However,
that portion of the contract for a lease of premises
that indemnifies any person or organization
for damage by fire to premises while rented
to you or temporarily occupied by you with
permission of the owner is not an "insured contract";
b. A sidetrack agreement;
c. Any easement or license agreement, except in
connection with construction or demolition operations
on or within 50 feet of a railroad;
d. An obligation, as required by ordinance, to
indemnify a municipality, except in connection
with work for a municipality;
e. An elevator maintenance agreement;
f. That part of any other contract or agreement

17

pertaining to your business (including an indemnification of a municipality in connection
with work performed for a municipality) under
which you assume the tort liability of another
party to pay for "bodily injury" or "property damage"
to a third person or organization. Tort liability
means a liability that would be imposed by
law in the absence of any contract or agreement.
Paragraph f. does not include that part of any
contract or agreement:
(1) That indemnifies a railroad for "bodily injury"
or "property damage" arising out of construction
or demolition operations, within 50
feet of any railroad property and affecting
any railroad bridge or trestle, tracks, roadbeds,
tunnel, underpass or crossing;
(2) That indemnifies an architect, engineer or
surveyor for injury or damage arising out of:
(a) Preparing, approving, or failing to prepare
or approve, maps, shop drawings,
opinions, reports, surveys, field orders,
change orders or drawings and specifications;
or
(b) Giving directions or instructions, or failing
to give them, if that is the primary
cause of the injury or damage; or
(3) Under which the insured, if an architect,
engineer or surveyor, assumes liability for
an injury or damage arising out of the insured's
rendering or failure to render professional
services, including those listed in
(2) above and supervisory, inspection, architectural
or engineering activities.
***
13. "Occurrence" means an accident, including continuous
or repeated exposure to substantially the
same general harmful conditions.
***
16. "Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage"

18

occurring away from premises you own or
rent and arising out of "your product" or "your
work" except:
(1) Products that are still in your physical possession;
or
(2) Work that has not yet been completed or
abandoned. However, "your work" will be
deemed completed at the earliest of the following
times:
(a) When all of the work called for in your
contract has been completed.
(b) When all of the work to be done at the
job site has been completed if your contract
calls for work at more than one job
site.

(c) When that part of the work done at a job
site has been put to its intended use by
any person or organization other than
another contractor or subcontractor
working on the same project.
Work that may need service, maintenance,
correction, repair or replacement, but which
is otherwise complete, will be treated as
completed.
b. Does not include "bodily injury" or "property
damage" arising out of:
(1) The transportation of property, unless the
injury or damage arises out of a condition in
or on a vehicle not owned or operated by
you, and that condition was created by the
"loading or unloading" of that vehicle by any
insured;
(2) The existence of tools, uninstalled equipment
or abandoned or unused materials; or
(3) Products or operations for which the classification,
listed in the Declarations or in a policy
schedule, states that products completed
operations are subject to the
General Aggregate Limit.

17. "Property damage" means:
a. Physical injury to tangible property, including all
resulting loss of use of that property. All such
loss of use shall be deemed to occur at the
time of the physical injury that caused it; or
b. Loss of use of tangible property that is not
physically injured. All such loss of use shall be
deemed to occur at the time of the "occurrence"
that caused it.
***
21. "Your product":
a. Means:
(1) Any goods or products, other than real
property, manufactured, sold, handled, distributed
or disposed of by:

(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business
or assets you have acquired; and
(2) Containers (other than vehicles), materials,
parts or equipment furnished in connection
with such goods or products.
b. Includes
(1) Warranties or representations made at any
time with respect to the fitness, quality, durability,
performance or use of "your product";
and
(2) The providing of or failure to provide warnings
or instructions.
c. Does not include vending machines or other
property rented to or located for the use of others
but not sold.
22. "Your work":
a. Means:
(1) Work or operations performed by you or on
your behalf; and
(2) Materials, parts or equipment furnished in
connection with such work or operations.
b. Includes

20

(1) Warranties or representations made at any
time with respect to the fitness, quality, durability,
performance or use of "your work",
and
(2) The providing of or failure to provide warnings
or instructions.

## COUNT I - DECLARATORY JUDGMENT
## (ALL DEFENDANTS)

53.     Plaintiff reincorporates the foregoing paragraphs by reference.

54.     Plaintiff seeks a determination from the Court that it does not have, in

part, a duty to indemnify Defendants VCL and VPL pursuant to the above-

referenced Nautilus Construction Policies and Nautilus Properties policies.

55.     Reserving all rights and without waiver of any such rights, Plaintiff has

acknowledged its present duty to defend and does not seek a determination from the

Court regarding the duty to defend VCL and VPL in the Underlying Action, except

as it relates to the obligations of other insurers to contribute all or a portion of defense

costs and reimburse Nautilus.

56.     The Nautilus Construction Policies and Nautilus Properties Policies,

including but not limited to the above-referenced language, do not require

indemnification by Nautilus in whole or in part for damages sought by underlying

Plaintiffs against VCL and VPL. Therefore, there is a real, justiciable dispute

regarding whether Plaintiff has a duty to indemnify VCL and VPL in the Underlying

Action, and, if so, the extent and scope of such duty.

21

57.     In material part, Plaintiff seeks a determination from the Court that it has no duty to indemnify VCL and VPL regarding the claims of faulty workmanship on Enclave Buildings 1-4, which were undisputedly completed before Plaintiff's earliest applicable policy period beginning in September 2007. This lack of a duty to indemnify VCL and VPL for the claims of faulty workmanship on Enclave Buildings 1-4 is based on established facts not in dispute in the Underlying Action, constituting an independent and separable issue which is ripe for adjudication prior to entry of judgment in the Underlying Action.

58.     Plaintiff further seeks a determination from the Court regarding application of policy terms and provisions to damages sought by Underlying Plaintiffs in the Underlying Action against VCL and VPL, specifically including a determination that Nautilus has no duty to indemnify VCL and VPL regarding the claims of faulty workmanship on Enclave Building 5.

## COUNT II - EQUITABLE CONTRIBUTION
### (INSURANCE DEFENDANTS)

59.     Plaintiff reincorporates the foregoing paragraphs by reference.

60.     EMC provided insurance policies to VCL from 9/1/2005 to 9/1/2007.

61.     EMC, pursuant to its February 8, 2019 reservation of rights letter, has acknowledged that the defense had been tendered to it regarding the Underlying Action and accordingly its duty to defend VCL has been triggered by the allegations made in the Underlying Action.

22

62.    Upon information and belief, the Insurance Defendants, including EMC, Sentinel, and Underwriters, have received notice of the Underlying Action and have a duty to defend either one or both VCL and VPL in the Underlying Action.

63.    As Nautilus has provided a defense, and costs incurred with that defense continue to accrue, pursuant to the doctrine of equitable contribution, it is entitled to contribution from the Insurance Defendants for their equitable shares of defense costs expended in the Underlying Action.

64.    Additionally, to the extent Insurance Defendants have a duty to indemnify and to the extent of any indemnity is paid by Nautilus, Insurance Defendants are liable for their equitable share of any such indemnity payments.

## COUNT III – BREACH OF THE DUTY TO DEFEND AND INDEMNIFY (SENTINEL AND UNDERWRITERS)

65.    Plaintiff reincorporates the foregoing paragraphs by reference.

66.    Defense and indemnity of VPL and VCL were tendered to both Sentinel and Underwriters.

67.    Under Montana law, Sentinel and Underwriters had a duty to defend the Underlying action against one or both VPL and VCL unless Sentinel and Underwriters could unequivocally demonstrate that the claims against its insureds fall outside the scope of coverage.

68.     Upon information and belief, Sentinel, through its defense of Voyager Group, a party to the Underlying Action, had information regarding the Underlying Action and the involvement of VPL and VCL prior to May 2019.

69.     Both Sentinel and Underwriters failed to make an unequivocal showing that coverage was not triggered under their respective policies by the facts alleged against VPL and VCL in the operative complaint. Therefore, Sentinel and Underwriters owed a duty to defend one or both VPL and VCL in the Underlying Action.

70.     Both Sentinel and Underwriters failed to acknowledge their respective duties to defend and indemnify VPL and VCL.

71.     Both Sentinel and Underwriters failed to defend or indemnify VPL and VCL in the Underlying action.

72.     As a result of failing to defend VCL and VPL, Sentinel and Underwriters waived any policy defense they may have to indemnify VCL and VPL.

73.     Both Sentinel and Underwriters breached their respective duties to defend and indemnify VPL and VCL.

74.     Sentinel and Underwriters are therefore liable to VCL and VPL in the amount of the settlement of the Underlying Action and the amount of attorney fees paid in the Underlying Action.

75.     By reason of the assignment of VCL and VPL's rights, Nautilus is entitled to judgment against Sentinel and Underwriters in the amount of the settlement of the Underlying Action and defense costs in the Underlying Action.

## COUNT IV – BAD FAITH – MONT. CODE ANN. § 33-18-242 (SENTINEL AND UNDERWRITERS)

76.     Plaintiff reincorporates the foregoing paragraphs by reference.

77.     Sentinel and Underwriters owed duties to its insureds, one or both VCL and VPL, pursuant to their respective insurance contracts and pursuant to Mont. Code Ann. §§ 33-18-201 *et seq.*.

78.     In refusing to defend and indemnify VPL and VCL, affirm or deny coverage for VPL and VCL, acknowledge and act reasonably promptly upon communications with respect to claims arising under VPL and VCL's insurance policies, effectuate prompt and fair settlement on behalf of VPL and VCL where liability has become reasonably clear, and comply with the other duties set forth Mont. Code Ann. § 33-18-201, Sentinel and Underwriters breached their duties owed to VPL and VCL under Montana's Unfair Trade Practices Act.

79.     As a proximate result of Sentinel and Underwriter's bad faith, and by reason of VPL and VCL's assignment of rights, Nautilus has suffered actual damages of the amount of the settlement of the Underlying Suit, and the amount of defense costs incurred in the Underlying Suit.

## **PRAYER FOR RELIEF**

WHEREFORE, Nautilus respectfully demands judgment in its favor and against VCL, VPL, EMC, Sentinel, and Underwriters as follows:

1.      An Order regarding the extent and scope of its duty to indemnify VCL and VPL, if any, in relation to damages sought by Underlying Plaintiffs in the Underlying Action;

2.      An Order regarding the extent and scope of its duty to indemnify VCL and VPL, if any, specifically with regard to claims of faulty workmanship on Enclave Buildings 1-4, which were undisputedly completed before Plaintiff's earliest applicable policy period beginning in September 2007;

3.      An Order regarding the extent and scope of its duty to indemnify VCL and VPL, if any, in relation to damages sought by Plaintiffs in the Underlying Action, including specifically with regard to claims of faulty workmanship on Enclave Building 5, which was undisputedly completed in 2013;

4.      An award of damages against the Insurance Defendants and in favor of Nautilus in the amount of each Insurance Defendant's equitable share of defense costs and, if applicable, indemnity in the Underlying Action; and,

5.      General and special damages arising out of Sentinel's and Underwriter's breach of the duty to defend, duty to indemnify, and duties and responsibilities set forth in Mont. Code Ann. § 33-18-201 *et seq.*;

26

6.      Its attorney fees expended in this action as provided by Montana law and the assignment; and,

7.      On all claims for relief, for costs of suit and for such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Nautilus hereby demands a trial by jury on all issues of fact so triable.

DATED this 31st day of July, 2019.

**HALVERSON, MAHLEN & WRIGHT, P.C.**


By:   /s/ Thomas L. Mahlen, Jr.
        THOMAS L. MAHLEN, JR.
        JOHN L. WRIGHT
        P.O. Box 80470
        Billings, MT 59108-0470

        ***Attorneys for Nautilus Insurance Company***